IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| THOMAS HOWES, | * | |
| Plaintiff, | * | |
| v. | * | Case No.: 8:18-cv-03094-PWG |
| FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC., | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Thomas Howes has filed this federal lawsuit seeking an order expunging customer complaints from a securities industry regulator's database. The regulator, the Financial Industry Regulatory Authority, Inc. ("FINRA"), has moved to dismiss the suit under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Although FINRA has not sought a dismissal for lack of subject-matter jurisdiction under Rule 12(b)(1), my own review of the relevant case law has uncovered several federal district court decisions remanding similar expungement petitions to state court on jurisdictional grounds. *See Godfrey v. Fin. Indus. Regulatory Auth., Inc.*, No. 16-2776 PSG (PJWx), 2016 WL 4224956, at *5 (C.D. Cal. Aug. 9, 2016); *Flowers v. Fin. Indus. Regulatory Auth., Inc.*, No. 15cv2390 DMS (JMA), 2015 WL 9487450, at *3 (S.D. Cal. Dec. 24, 2015); *Doe v. Fin. Indus. Regulatory Auth., Inc.*, No. 13-6436 DDP (ASx), 2013 WL 6092790, at *4 (C.D. Cal. Nov. 19, 2013); *Spalding v. Fin. Indus. Regulatory Auth., Inc.*, No. 1:12-CV-1181-RWS, 2013 WL 1129396, at *6 (N.D. Ga. Mar. 19, 2013); *In re Lickiss*, No. C-11-1986 EMC, 2011 WL 2471022, at *4 (N.D. Cal. June 22, 2011). In view of these precedents, I am denying FINRA's

1

motion without prejudice and ordering the parties to brief the issue of whether this Court has subject-matter jurisdiction over Mr. Howes's Complaint.

## BACKGROUND

The Securities Exchange Act of 1934 (the "Exchange Act") "vests registered national securities associations with a prominent role in the administration and enforcement of federal securities law." *Turbeville v. Fin. Indus. Regulatory Auth.*, 874 F.3d 1268, 1270 (11th Cir. 2017). FINRA, a private, not-for-profit Delaware corporation, is one of those registered associations, commonly known as "self-regulatory organizations," or SROs. *See id.* In this capacity, FINRA enjoys "regulatory oversight of all securities firms that do business with the public" and is responsible for providing "professional training, testing[,] and licensing of registered persons" and for arbitrating and mediating disputes. *Sacks v. SEC*, 648 F.3d 945, 948 (9th Cir. 2011) (quoting 72 Fed. Reg. 42,169, 42,170 (Aug. 1, 2007)).

Among the various requirements the Exchange Act imposes on SROs such as FINRA is an obligation to "establish and maintain a system for collecting and retaining registration information." 15 U.S.C. § 78o-3(i)(1)(A). The statute defines "registration information" as "information reported in connection with the registration or licensing of brokers and dealers and their associated persons, including disciplinary actions, regulatory, judicial, and arbitration proceedings, and other information required by law, or exchange or association rule, and the source and status of such information." *Id.* § 78o-3(i)(5). FINRA maintains much of this information in an electronic database called the Central Registration Depository ("CRD"). *See Spalding v. Fin. Indus. Regulatory Auth., Inc.*, No. 1:12-CV-1181-RWS, 2013 WL 1129396, at *1 (N.D. Ga. Mar. 19, 2013). It also makes information about current and former members publicly available via an online application known as "BrokerCheck." *See id.*; 75 Fed. Reg. 41,254, 41,254 (July 15, 2010).

Mr. Howes has worked in the investment field for nearly three decades. *See* CRD Entry 10-11, ECF No. 6-1. In February 2018, he filed two arbitration claims in FINRA's Office of Dispute Resolution, each seeking to expunge certain records from the CRD. *See* July 2018 Arbitration Award 1-2, ECF No. 1-4. The cases were soon consolidated. *See id.* at 2-3.

Mr. Howes's first petition, dated February 1, 2018, named Morgan Stanley as the respondent. *See* Morgan Stanley Pet. 1, ECF No. 1-5. The petition sought the expungement of a complaint a customer filed against him on July 24, 2001, while Mr. Howes was a senior financial advisor for Smith Barney. *See id.* at 2. In it, Mr. Howes recounted that the customer filed the complaint after the "Smith Barney wire room accidentally did a syndicate trade in" the customer's account in spite of the customer's explicit instruction that he wanted "Mr. Howes to sit tight with his investments [and] not to purchase anymore [sic] securities, or increase his margin." *Id.* at 4. The petition alleged that Mr. Howes "had nothing to do with the trade" and that Smith Barney corrected the error. *Id.* The complaint, however, could still be found in the CRD. *See id.*

Mr. Howes filed his second petition on February 2, 2018, this time naming Citigroup Global Markets as respondent. *See* Citigroup Pet., ECF No. 1-6; Arbitration Award 2. There, Mr. Howes sought to expunge a pair of complaints another customer had filed against him, also in the early 2000s. *See* Citigroup Pet. 1-3. The petition noted that Mr. Howes had paid the customer $100,000 in connection with the first complaint and was "told by CitiGroup that this matter was put to bed." *Id.* at 3. It argued the second claim, filed on May 19, 2003, "was factually impossible and clearly erroneous." *Id.*

In July 2018, a three-member FINRA arbitration panel denied all of Mr. Howes's claims in their entirety. *See* Arbitration Award 3. This federal lawsuit soon followed. Mr. Howes, who is representing himself, named FINRA as the lone defendant and styled the Complaint as a

3

"Petition for Declaratory Relief and Expungement." Compl. 9, ECF No. 1. The Complaint accuses FINRA of reporting "erroneous information" about him on BrokerCheck and the CRD. *Id.* at 13. It acknowledges that he previously sought to expunge the allegedly false complaints through FINRA's arbitration procedures but alleges those procedures "are flawed in that they only require member firms to retain documents and information for 6 years." *Id.* at 10; *see* 17 C.F.R. § 240.17a-4 (2014). It says he "could have easily proven the customer complaints [were] false" if FINRA had required the companies he named as respondents to preserve documents relating to the complaints against him,[1] at least one of which was 17 years old at the time he filed his Complaint in this Court. *Id.* The Complaint closes by stating, "Plaintiff respectfully request[s] this court to grant relief through expungement." *Id.* at 13.

FINRA moved on November 30, 2018, to dismiss the Complaint. FINRA Mem., ECF No. 6. Its motion raises three arguments: first, that Mr. Howes is collaterally estopped from litigating this suit against FINRA following the denial of his arbitration claims; second, that FINRA enjoys absolute immunity in its roles as a regulator and as an arbitration forum; and, third, that Mr. Howes "has no private right of action against FINRA for its regulatory acts and omissions, including how it administers the regulatory scheme for securities reporting, disclosure and expungement, or for how it administers arbitration proceedings." *Id.* at 2-3. Alternatively, the motion urges the Court to "exercise its discretion to deny declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201." *Id.* at 3.

---

[1] Mr. Howes included as an exhibit to his Complaint an April 11, 2018 letter from the law firm representing Citigroup Global Markets, Inc. in the arbitration procedures. ECF No. 1-3. The letter, addressed to Mr. Howes, states in relevant part: "Please be advised that the customer complaint that is the subject of this expungement was filed in July 2001, nearly 17 years ago. Citigroup's document retention policies, along with the securities laws, do not require Citigroup to maintain these documents for 17 years. These documents are therefore unavailable." *Id.*

## DISCUSSION

FINRA's motion has been fully briefed and is ripe for a decision. *See* ECF Nos. 6-1, 10, 13. Before addressing the organization's arguments, though, this Court has an obligation to assure itself of its jurisdiction, no matter whether either of the parties has challenged it. *See United States v. Wilson*, 699 F.3d 789, 793 (4th Cir. 2012); *Brown v. Hungtington Ingalls, Inc.*, No. 4:13CV26, 2013 WL 5591932, at *3 (E.D. Va. July 25, 2013) ("[W]hen a district court is aware of the absence of subject matter jurisdiction, it must 'raise such lack of subject-matter jurisdiction on its own motion,' without regard to the positions of the parties." (quoting *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

"Jurisdiction of the lower federal courts is . . . limited to those subjects encompassed within a statutory grant of jurisdiction." *Ins. Corp. of Ireland*, 456 U.S. at 701. Mr. Howes's Complaint asserts that this Court has federal-question jurisdiction over this action under 28 U.S.C. § 1331. *See* Compl. 4. It cites, in particular, the Securities Exchange Act of 1934, 15 U.S.C. § 78a, as a federal law at issue in this case.[2] *Id.*

Although FINRA has not challenged this Court's jurisdiction, subject matter jurisdiction "cannot be conceded by any party; nor can it be granted by this Court in its discretion." *McGahey v. Giant Food, Inc.*, 300 F. Supp. 475, 477 (D. Md. 1969). It is a threshold matter that, if at all in doubt, must be addressed before this Court may reach the merits of FINRA's arguments in support of a dismissal under Rule 12(b)(6). Such a doubt is present here, as my review of federal district

---

[2] The handwritten Complaint, drafted without the aid of counsel, cites 15 U.S.C. § 78o-3 and § 78s(g)(1), in particular, as relevant statutory provisions. *See* Compl. 4.

court cases involving similar petitions to expunge FINRA records has uncovered five decisions remanding the petitions to state court for lack of federal subject-matter jurisdiction.³ *See Godfrey v. Fin. Indus. Regulatory Auth., Inc.*, No. 16-2776 PSG (PJWx), 2016 WL 4224956, at *5 (C.D. Cal. Aug. 9, 2016); *Flowers v. Fin. Indus. Regulatory Auth., Inc.*, No. 15cv2390 DMS (JMA), 2015 WL 9487450, at *3 (S.D. Cal. Dec. 24, 2015); *Doe v. Fin. Indus. Regulatory Auth., Inc.*, No. 13-6436 DDP (ASx), 2013 WL 6092790, at *4 (C.D. Cal. Nov. 19, 2013); *Spalding v. Fin. Indus. Regulatory Auth., Inc.*, No. 1:12-CV-1181-RWS, 2013 WL 1129396, at *6 (N.D. Ga. Mar. 19, 2013); *In re Lickiss*, No. C-11-1986 EMC, 2011 WL 2471022, at *4 (N.D. Cal. June 22, 2011). I have, by contrast, found no cases expressly holding that petitions to expunge FINRA records are matters over which the federal courts have subject-matter jurisdiction.⁴

Courts that have assessed this issue typically have focused, as I will here, on FINRA Rule 2080, which sets out a procedure for expunging records from the CRD.⁵ The rule provides in part:

---

³ Another federal district court observed, in granting FINRA's motion to dismiss a registered security principal's petition to expunge or vacate disciplinary records, that there did not appear to be any "caselaw directly on point in which a federal district court has ruled that it has the power to consider and order expungement of a final disciplinary Order from [FINRA's] CRD." *Buscetto v. Fin. Indus. Regulatory Auth.*, No. 11-6308 (JAP), 2012 WL 1623874, at *4 (D.N.J. May 9, 2012). FINRA's motion had sought dismissal under Rules 12(b)(1), 12(b)(6), and 12(h)(3). The court's opinion does not specify which of these rules supplied the basis for granting the motion.

⁴ One federal district court did conclude that it "has the power to order an expungement of a CRD record." *Reinking v. Financial Industry Regulatory Authority*, No. A-11-CA-813-SS, 2011 WL 13113323, at *1 (W.D. Tex. Dec. 1, 2011). That court, though, did not frame its conclusion in terms of federal statutory subject-matter jurisdiction. There, rather, FINRA had argued that the district court was precluded from ordering an expungement "because there was no finding from an arbitration panel in favor of expungement." *Id.* at *2. The court rejected this argument because FINRA had cited no authority for it, and because FINRA Rule 2080 expressly contemplates that a court may have "independent power to grant such relief. *Id.* (citing FINRA R. 2080(a)). The court's opinion notes in passing that the case had been removed from state court "under federal-question jurisdiction," *id.* at *1, but does not otherwise discuss the issue of subject-matter jurisdiction.

⁵ The Exchange Act authorizes self-regulatory organizations like FINRA to issue rules governing their members and associated individuals. *See* 15 U.S.C. § 78s(b); *Sacks*, 648 F.3d at 948. Proposed rule changes are subject to SEC approval. *See* § 78s(b)(1).

6

"Members or associated persons seeking to expunge information from the CRD system arising from disputes with customers must obtain an order from a court of competent jurisdiction directing such expungement or confirming an arbitration award containing expungement relief." FINRA R. 2080(a). The rule, as several courts have noted, "does not provide any substantive standard for determining whether expungement is appropriate or required." *In re Lickiss*, 2011 WL 2471022, at *2; *see also Doe*, 2013 WL 6092790, at *2. It does specify that, generally, a party petitioning for expungement or for confirmation of an arbitration award containing expungement relief "must name FINRA as an additional party and serve FINRA with all appropriate documents." FINRA R. 2080(b). FINRA, however, may waive this requirement under certain conditions – for example, if it determines the expungement relief "is based on affirmative judicial or arbitral findings" that the reported information is false, "factually impossible," or "clearly erroneous." FINRA R. 2080(b)(1).

In cases where FINRA has sought to remove an expungement petition from state court, the organization has identified two possible bases for federal jurisdiction. In a number of instances, it has argued that federal courts have exclusive jurisdiction over such petitions under 15 U.S.C. § 78aa.[6] Alternatively, it has sought to invoke federal-question jurisdiction under 28 U.S.C. § 1331.

Section 78aa provides, in relevant part, that the federal district courts "shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder." 15 U.S.C. § 78aa(a). Across the various cases that have analyzed FINRA's arguments involving this provision, the inquiry has invariably boiled down to

---

[6] Mr. Howes's Complaint includes a reference to § 78aa. *See* Compl. ¶ 25.

7

whether the plaintiff was seeking to enforce a "*duty* created by [the Exchange Act] or the rules and regulations thereunder."[7] *Id.* (emphasis added); *see Doe*, 2013 WL 6092790, at *2-*3; *Spalding*, 2013 WL 1129396, at *3; *In re Lickiss*, 2011 WL 2471022, at *3.

In *In re Lickiss*, the federal district court started with the premise that, under a precedent binding on that court (but, notably, not on this one), the universe of "rules and regulations thereunder," to which § 78aa alludes, includes rules issued by FINRA. 2011 WL 2471022, at *3 (citing *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1212 (9th Cir. 1998)). Accordingly, rules such as Rule 2080 might, conceivably, impose a "duty" capable of enforcement in federal court under § 78aa. The court, however, concluded that Rule 2080 did not impose any such duty, explaining: "While FINRA Rule 2080 addresses expungement, it only sets forth procedures, not a substantive duty." *Id.* at *4. Specifically, it stated:

> Subsection (a) of the rule simply states that "members or associated persons seeking to expunge information from the CRD system arising from disputes with customers must obtain an order from a court of competent jurisdiction directing such expungement...." FINRA Rule 2080(a). Subsection (b) of the rule affords FINRA the ability to participate in the judicial proceeding. In the instant case, Mr. Lickiss is pursuing a procedure established by Rule 2080(a). He does not assert that FINRA has violated any particular duty and thus does not seek to enforce any such duty owed by FINRA.

*Id.*

The court likewise rejected FINRA's argument that the Exchange Act itself imposed a duty to expunge. *See id.* at *3. FINRA, it stated, had failed to identify any statutory provisions referencing such a duty. *See id.* And while the Exchange Act does impose a "duty to 'collect[] and retain[] registration information,'" the court observed that the plaintiff there was "not asking

---

[7] In *In re Lickiss*, the district court noted that FINRA had conceded during a hearing that "it was not making any argument that Mr. Lickiss's lawsuit was brought to enforce a 'liability,' as opposed to a 'duty,' under § 78aa." 2011 WL 2471022, at *3 n.2.

8

any court to compel FINRA to 'collect[] and retain[] registration information.'" *Id.* (quoting 15 U.S.C. § 78o-3(i)(1)(A)). Rather, it stated, the plaintiff was "asking a court to expunge registration information which has been collected and retained by FINRA. FINRA has failed to specifically identify any duty it has to expunge." *Id.* At least two other courts have cited *Lickiss* favorably and have reached the same conclusion: that petitions to expunge customer claims or arbitration disclosures from the CRD are not subject to exclusive federal jurisdiction under § 78aa. *See Doe*, 2013 WL 6092790, at *2-*3; *Spalding*, 2013 WL 1129396, at *4-*5; *see also Flowers*, 2015 WL 9487450, at *1-*2 (discussing *Lickiss* and concluding that § 78aa did not provide exclusive federal jurisdiction over a petition to remove regulatory information).

The *Lickiss* court had no occasion to consider whether a FINRA expungement petition might have come within the court's federal-question jurisdiction under 28 U.S.C. § 1331, because FINRA did not raise this argument in that case. *See In re Lickiss*, 2011 WL 2471022, at *2. Since then, however, four other courts have addressed the issue and have concluded it does not. *See Godfrey*, 2016 WL 4224956, at *5; *Flowers*, 2015 WL 9487450, at *3; *Doe*, 2013 WL 6092790, at *3; *Spalding*, 2013 WL 1129396, at *3-*6.

The federal-question jurisdiction statute confers on the district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "For statutory purposes, a case can 'aris[e] under' federal law in two ways." *Gunn v. Minton*, 568 U.S. 251, 257 (2013). First, "[i]n the 'vast majority' of cases, federal question jurisdiction exists under section 1331 only if federal law creates the plaintiff's cause of action." *Columbia Gas Transmission Corp. v. Drain*, 191 F.3d 552, 557 (4th Cir. 1999) (quoting *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986)). Second, section 1331

> confers jurisdiction over a "special and small category" of claims that originate in "state rather than federal law." In such situations,

> as the [Supreme] Court has recognized, "arising under" jurisdiction will only exist over a state-law claim if a "federal issue" is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."

*Hunter Labs.*, 828 F.3d at 287 (internal citation omitted) (quoting *Gunn*, 568 U.S. at 258).

In *Spalding v. Financial Industry Regulatory Authority, Inc.*, an investment advisor sued FINRA in a Georgia state court, seeking a declaratory judgment under Georgia law expunging information from the advisor's CRD and BrokerCheck profiles. 2013 WL 1129396, at *1-*2. FINRA removed the suit to federal court on the basis of federal-question jurisdiction, arguing, first, that the advisor's request was, in actuality, a plea to relieve FINRA of a duty arising under the Exchange Act and, second, that it would require the court to interpret a federal law – specifically, FINRA Rule 2080. *See id.* at *3. The district court rejected both arguments. *See id.* at *3-*6. First, amid a lengthy discussion of *Lickiss*, the court characterized Rule 2080 as a mere "procedural rule" and noted that FINRA had otherwise been unable to "point to any authority establishing a duty to expunge." *Id.* at *4. Second, the court agreed with the advisor that "expungement does not implicate a substantial issue of federal law," as Rule 2080 "does not provide any substantive criteria for courts to apply to determine whether information should be expunged from an investment advisor's record." *Id.* Concluding the case did not present a federal question, the court granted the advisor's motion for remand. *See id.* at *6.

The result was the same in *Doe v. Financial Regulatory Authority, Inc.*, No. 13-6436 DDP (ASx), 2013 WL 6092790 (C.D. Cal. Nov. 19, 2013). There, upon removal, a broker-dealer sought to remand his state court lawsuit seeking declaratory relief and expungement of customer disputes listed on BrokerCheck. *See* 2013 WL 6092790, at *1. The federal court, relying on both *Lickiss* and *Spalding*, granted the motion, finding that jurisdiction did not exist under either 15 U.S.C.

§ 78aa or 28 U.S.C. § 1331. *See* 2013 WL 6092790, at *1, at *2-*3. In rejecting FINRA's invocation of federal-question jurisdiction, the court explained that the broker-dealer "does not seek a declaration or other direct relief for FINRA's failure to remove" the information about the customer disputes. *Id.* at *3. Rather, the broker-dealer was merely alleging "that FINRA refused to remove [the information] from his CRD record and that FINRA is required to do so pursuant to [its] own rules." *Id.* Consequently, the court reasoned, "the cause of action for expungement does not raise a substantial issue of federal law," as there was no need to consult federal law to determine whether FINRA owed a duty under the circumstances. *Id.*

These precedents, though not binding here, call this Court's jurisdiction into question. While Mr. Howes's Complaint refers to FINRA's "statutory obligations under the Exchange Act to maintain customer dispute information and make that information publicly available," Compl. ¶ 23; *see also id.* ¶ 26 (demanding expungement on the grounds that the disputed records "were made pursuant to the FINRA rules, and are maintained pursuant to FINRA rules"), it does not allege that FINRA failed to fulfill either of these particular obligations. And while Mr. Howes complains that FINRA's failure to require member firms to retain documents for more than six years deprived him of a "fair arbitration," *id.* ¶ 26, his Complaint does not identify any federal laws that FINRA might in theory have violated. *See Hunter Labs.*, 828 F.3d at 286 (noting that, under § 1331, a federal district court "may examine only that which 'necessarily appears in the plaintiff's statement of his own claim' in assessing whether there is jurisdiction over the action" (quoting *Franchise Tax Bd.*, 463 U.S. at 10)).

11

While I might simply conclude that subject-matter jurisdiction is lacking here,[8] I am reluctant to make such a determination without first giving the parties an opportunity to brief the issue. For this reason, I am ordering the parties to submit briefs on whether this Court has subject-matter jurisdiction over Mr. Howes's Complaint. The briefs should address the following questions: (1) under which federal statutes, if any, may the Court's subject-matter jurisdiction be based?; (2) what specific "liability or duty created by [the Exchange Act] or the rules and regulations thereunder," if any, does Mr. Howes's Complaint seek to enforce so as to invoke exclusive federal jurisdiction under 15 U.S.C. § 78aa?; (3) does § 78aa extend jurisdiction to suits to enforce liabilities or duties created by FINRA rules?; (4) does Mr. Howes's Complaint properly invoke federal-question jurisdiction under 28 U.S.C. § 1331 by asserting a federally-created cause of action, and, if so, what federal law, specifically, creates that cause of action?; (5) alternatively, does the Complaint entail a federal issue that is necessarily raised, actually disputed, substantial, and capable of resolution in federal court, so as to invoke federal jurisdiction under § 1331?; (6) are there any other potential bases for federal jurisdiction here?; and, finally, (7) assuming jurisdiction does exist, what standards should this Court apply in determining whether to grant the

---

[8] Mr. Howes's Complaint purports to seek "declaratory relief," suggesting he may intend to invoke the Declaratory Judgment Act, 28 U.S.C. § 2201. But the Declaratory Judgment Act "does not supply its own jurisdictional base." *Univ. Gardens Apartments Joint Venture v. Johnson*, 419 F. Supp. 2d 733, 742 (D. Md. 2006) (quoting *Delavigne v. Delavigne*, 530 F.2d 598, 601 (4th Cir. 1976)); *see Proa v. NRT Mid Atl., Inc.*, 477 F. Supp. 2d 677, 681 (D. Md. 2007). A district court cannot exercise jurisdiction to award declaratory relief under the Act unless it "possesses an independent basis for jurisdiction over the parties (e.g., federal question or diversity jurisdiction." *Hogs & Heroes Found. Inc. v. Heroes, Inc.*, 202 F. Supp. 3d 490, 494 (D. Md. 2016) (quoting *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 592 (4th Cir. 2004)). Mr. Howes has not sought to invoke diversity jurisdiction under 28 U.S.C. § 1332, and unless he can establish some other basis for federal subject-matter jurisdiction, the Declaratory Judgment Act cannot rescue his suit from dismissal for lack of jurisdiction.

relief Mr. Howes seeks? The Order at the conclusion of this Memorandum Opinion sets out the briefing schedule and page limitations.

While I await the parties' briefing on this threshold issue, there will be no occasion to review the merits of FINRA's Rule 12(b)(6) motion (ECF No. 6). I am therefore denying FINRA's motion without prejudice. FINRA may refile its motion if, upon review of the parties' forthcoming briefs, I conclude that Mr. Howes's suit is within this Court's jurisdictional power to hear.[9]

## **ORDER**

Accordingly, it is this 11th day of June, 2019, by the United States District Court for the District of Maryland, hereby ORDERED that:

1. Defendant FINRA's Motion to Dismiss (ECF No. 6) IS DENIED without prejudice;

2. The parties must submit briefing on whether this Court has subject-matter jurisdiction over Mr. Howes's Complaint. The briefs must address the following questions:

> (1) under which federal statutes, if any, may the Court's subject-matter jurisdiction be based?;
>
> (2) what specific "liability or duty created by [the Exchange Act] or the rules and regulations thereunder," if any, does Mr. Howes's Complaint seek to enforce so as to invoke exclusive federal jurisdiction under 15 U.S.C. § 78aa?;

---

[9] I find this step appropriate in part because the collateral estoppel argument in FINRA's motion to dismiss fails to address some fundamental issues. In particular, it does not explain whether the preclusive effect of the arbitration award is governed by federal or state law (and, if the latter, which state's law applies). It likewise fails to cite any authority for the supposition that an unconfirmed arbitration award may form the predicate for collateral estoppel. FINRA will need to address these issues if, ultimately, I conclude that I have jurisdiction over this case.

(3) does § 78aa extend jurisdiction to suits to enforce liabilities or duties created by FINRA rules?;

(4) does Mr. Howes's Complaint properly invoke federal-question jurisdiction under 28 U.S.C. § 1331 by asserting a federally-created cause of action, and, if so, what federal law, specifically, creates that cause of action?;

(5) alternatively, does the Complaint entail a federal issue that is necessarily raised, actually disputed, substantial, and capable of resolution in federal court, so as to invoke federal jurisdiction under § 1331?;

(6) are there any other potential bases for federal jurisdiction here?; and

(7) assuming jurisdiction does exist, what standards should this Court apply in determining whether to grant the relief Mr. Howes seeks?

Unless otherwise ordered by the Court, briefs will be limited to fifteen pages, double spaced, and will be simultaneously filed by the parties by July 1, 2019. No responses are permitted without further authorization from the Court.

_____
Paul W. Grimm
United States District Judge